Filed
10 September 15 P7:38
Hannah Kunkle
District Clerk
Collin District

CAUSE NO. 416-03120-2010

| | | |
|---|---|---|
| VAL-COM ACQUISITIONS TRUST, and BEVERLY R. DEVAUGHN | } } } } } | IN THE DISTRICT COURT |
| Plaintiffs, | } } | |
| v. | } } | 416th JUDICIAL DISTRICT |
| FIRST HORIZON HOME LOANS, a division of FIRST TENNESSEE BANK NATIONAL ASSOCIATION | } } } } } | |
| Defendant. | } | OF COLLIN COUNTY, TEXAS |

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Val-Com Acquisitions Trust and Beverly R. DeVaughn, hereinafter called Plaintiffs, complaining of and about First Horizon Home Loans, a division of First Tennessee Bank National Association, hereinafter called Defendant, and file this First Amended Petition, and for cause of action show the Court the following:

### SELECTION OF DISCOVERY LEVEL

Plaintiffs plead that discovery should be conducted in accordance with a discovery control plan under Texas Rule of Civil Procedure 190.3 (Level 2).

### PARTIES AND SERVICE OF CITATION

Plaintiff Val-Com Acquisitions Trust ("Val-Com") is a trust organized and existing under

the laws of the State of Texas, whose address is P.O. Box 48467, Watauga, Texas 76148.

Plaintiff Beverly R. DeVaughn ("DeVaughn") is an individual. The last three numbers of this Plaintiff's social security number are 870. The last three numbers of this Plaintiff's driver's license number are 737.

Defendant First Horizon Home Loans, a division of First Tennessee Bank National Association ("First Horizon") is a foreign financial institution organized and existing under the laws of the State of Tennessee which transacts business in Texas. First Horizon has been served with process in this case.

## JURISDICTION AND VENUE

The subject matter in controversy is within the jurisdictional limits of this court.

This Court has jurisdiction over the parties because one or more of the Plaintiffs are residents of Texas, and Defendant transacts business in Texas.

Venue in Collin County is proper in this cause under Section 15.002 and / or Section 15.011 of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this county, or this action involves real property as provided by said Section 15.011, and this county is where all or part of the real property is located.

## FACTS

Val-Com is the current owner of record of the real property and improvements described as follows (the "Property"):

Lot 4, in Block H, of CHAPEL CREEK PHASE ONE, an Addition to the City of Frisco, Collin County, Texas, according to the Plat thereof recorded in Volume N, Page 749, of the Map Records of Collin County, Texas, and being more commonly known as 6434 Shady Oaks Drive, Frisco, Texas 75034.

Furthermore, Val-Com is the authorized agent and / or attorney-in-fact of DeVaughn with respect to the Property and all transactions relating to the Property.

On or about May 26, 2006, DeVaughn, as borrower, closed on a construction loan with First Horizon, as construction lender, in the original principal amount of $ 1,360,000.00 (the "Construction Loan"). The purpose of the Construction Loan was the purchase and construction of an upscale residence at the Property. First Horizon represented to DeVaughn that the Construction Loan would be a "one-time closing" transaction in which the borrower agrees to pay a higher construction loan interest during the construction period of the residence with the agreement that the Construction Loan will be converted to a conventional loan with a lower interest rate upon completion of the residence.

The seller / builder who acted as General Contractor for the construction of the residence was Classical Custom Homes, Inc. ("Classical") represented by its principal, Michael J. Marsolek. As part of the Construction Loan agreements, DeVaughn assigned her rights under the construction contract with Classical to First Horizon. At the time of the Construction Loan agreements, First Horizon represented to DeVaughn that it had established policies and procedures for the administration of construction loans, including the processing of draw requests, loan disbursements, and property inspections. First Horizon further represented to DeVaughn that in the administration of the Construction Loan, First Horizon would follow and comply with its established policies and

procedures for the administration of construction loans, including the processing of draw requests, loan disbursements, and property inspections.

Contrary to First Horizon's representations to DeVaughn, First Horizon failed and refused to:

a) monitor and verify the construction budget of Classical;

b) monitor and verify the construction schedule of Classical;

c) monitor, verify, and inspect the construction work performed by Classical;

d) monitor and verify the Construction Loan draw requests submitted by Classical;

e) monitor and verify the uses of the disbursements of Construction Loan funds to Classical;

f) monitor the payment of Classical's laborers, materialmen, and subcontractors;

g) monitor and obtain affidavits of payment and lien releases from Classical's laborers, materialmen, and subcontractors;

Because of First Horizon's failure and refusal to administer the Construction Loan and perform the loan administration activities described above, Classical was able to misuse and misappropriate Construction Loan funds and not pay Classical's laborers, materialmen, and subcontractors. Even after Devaughn notified First Horizon of her questions and concerns regarding Classical's misuse and misappropriation of Construction Loan funds and First Horizon's lack of administration of the Construction Loan, First Horizon failed and refused to investigate or prevent Classical's misuse and misappropriation of funds or implement the loan administration activities described above.

Because of First Horizon's failure and refusal to administer the Construction Loan and

perform the loan administration activities described above, laborers, materialmen, and subcontractors of Classical were not paid for labor performed and material supplied in amounts up to $250,000.00. As a result, at least ten laborers, materialmen, and subcontractors of Classical filed mechanic's and materialman's lien affidavits claiming liens against the Property, filed lawsuits seeking to foreclose their liens, and / or obtained judgments against DeVaughn and the Property.

After failing and refusing to administer the Construction Loan and perform the loan administration activities described above, and after causing laborers, materialmen, and subcontractors of Classical to file mechanic's and materialman's lien affidavits claiming liens against the Property, file lawsuits seeking to foreclose their liens, and / or obtain judgments against DeVaughn and the Property, in September, 2009, First Horizon demanded that DeVaughn enter into a Loan Modification Agreement of the Construction Loan. Contrary to the earlier representations made by First Horizon about the conversion of the Construction Loan to a conventional loan with a lower interest rate upon completion of the residence, First Horizon demanded a Loan Modification Agreement with an interest rate of 8.125%. This high interest rate resulted in a monthly payment of principal and interest in the amount of $10,097.97 for DeVaughn.

Due to alleged defaults in the Loan Modification Agreement by DeVaughn, First Horizon purportedly conducted a non-judicial foreclosure sale of the Property on Tuesday, August 3, 2010. However, DeVaughn would show that prior to purportedly conducting a non-judicial foreclosure sale, First Horizon failed to comply with the Loan Modification Agreement, the terms of the Deed of Trust or other security instrument which secures the Loan Modification Agreement, and the posting, filing, and notice requirements of Section 51.002 of the Texas Property Code regarding a

sale of real property under a power of sale conferred by a deed of trust or other security instrument.

## PLAINTIFFS' CLAIMS OF BREACHES OF CONTRACT

Plaintiffs would show that First Horizon's actions constitute breaches of contract because First Horizon breached the Construction Loan agreements that it entered in with DeVaughn. Furthermore, Plaintiffs would show that First Horizon's purported non-judicial foreclosure sale of the Property on August 3, 2010 without complying with the terms of the Construction Loan agreements, the Loan Modification Agreement, the Deed of Trust or other security instrument which secures the Loan Modification Agreement, and the posting, filing, and notice requirements of Section 51.002 of the Texas Property Code, constitute breaches of contract. As a direct result of First Horizon's breaches of contract, Plaintiffs have suffered and will continue to suffer monetary damages in excess of the minimum jurisdictional limits of this Court.

## PLAINTIFFS' CLAIMS OF BREACHES OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Pleading in the alternative, if such be necessary, Plaintiffs would show that First Horizon's purported non-judicial foreclosure sale of the Property on August 3, 2010 without complying with the terms of the Construction Loan agreements, the Loan Modification Agreement, the Deed of Trust or other security instrument which secures the Loan Modification Agreement, and the posting, filing, and notice requirements of Section 51.002 of the Texas Property Code constitute a breach of First Horizon's duty of good faith and fair dealing to DeVaughn. As a direct result of First Horizon's breach of duty of good faith and fair dealing, Plaintiffs have suffered and will continue to suffer monetary damages in excess of the minimum jurisdictional limits of this Court.

## PLAINTIFFS' CLAIMS OF BREACHES OF FIDUCIARY DUTIES

Pleading in the alternative, if such be necessary, Plaintiffs would show that First Horizon's failure and refusal to administer the Construction Loan and perform the loan administration activities described above, and First Horizon's failure and refusal to investigate or prevent Classical's misuse and misappropriation of Construction Loan funds or implement the loan administration activities described above after notification from DeVaughn constitute a breach of First Horizon's fiduciary duties, including a duty of loyalty and utmost good faith, to DeVaughn. As a direct result of First Horizon's breach of fiduciary duties, Plaintiffs have suffered and will continue to suffer monetary damages in excess of the minimum jurisdictional limits of this Court.

## PLAINTIFFS' CLAIM OF NEGLIGENCE

Pleading in the alternative, if such be necessary, Plaintiffs would show that First Horizon's failure and refusal to administer the Construction Loan and perform the loan administration activities described above, and First Horizon's failure and refusal to investigate or prevent Classical's misuse and misappropriation of Construction Loan funds or implement the loan administration activities described above after notification from DeVaughn constitute negligence. First Horizon failed to use ordinary and reasonable care in administering the Construction Loans, and investigating or preventing Classical's misuse and misappropriation of Construction Loan funds. As a direct result of First Horizon's negligence, Plaintiffs have suffered and will continue to suffer monetary damages in excess of the minimum jurisdictional limits of this Court.

### PLAINTIFFS' CLAIM FOR NEGLIGENT MISREPRESENTATION

Pleading in the alternative, if such be necessary, Plaintiffs would show that First Horizon's actions constitute negligent misrepresentation because when DeVaughn entered into the Construction Loan agreements with First Horizon, First Horizon represented that it had established policies and procedures for the administration of construction loans, including the processing of draw requests, loan disbursements, and property inspections. First Horizon further represented to DeVaughn that in the administration of the Construction Loan, First Horizon would follow and comply with its established policies and procedures for the administration of construction loans, including the processing of draw requests, loan disbursements, and property inspections.

Plaintiffs would show that when First Horizon made these representations, First Horizon did not exercise reasonable care or competence in obtaining or communicating this information to DeVaughn. DeVaughn has suffered actual economic damages by justifiably relying on these representations made by First Horizon.

### PLAINTIFFS' ACTION TO SET ASIDE SUBSTITUTE TRUSTEE'S FORECLOSURE SALE AND CANCEL SUBSTITUTE TRUSTEE'S FORECLOSURE SALE DEED

Defendant's purported foreclosure sale of the Property on August 3, 2010, and Defendant's recording of a purported foreclosure sale deed, are wrongful and must be set aside and cancelled for the following reasons:

    a.    Defendant's actions described herein constitute breaches of contract;

    b.    Defendant's actions described herein constitute a breach of Defendant's duty of good faith and fair dealing to Vaughn;

    c.    Defendant's actions described herein constitute breaches of Defendant's fiduciary duties to Vaughn;

    d.    Defendant's actions described herein constitute negligence; and

    e.    Defendant's actions described herein constitute negligent misrepresentation.

To allow Defendant to consummate a non-judicial foreclosure sale of the Property and record a foreclosure sale deed to the Property would allow Defendant to benefit from its own wrongdoing.

### PLAINTIFFS' ACTION TO REMOVE CLOUD AND QUIET TITLE

Plaintiffs petition this Court for a declaration of the invalidity of the purported foreclosure sale deed to the Property recorded by Defendant in the official property records of Collin County on or about August 3, 2010, in order to quiet title to the Property in which Plaintiffs have an interest.

Plaintiffs own legal and equitable interests in the Property, as more particularly described in deeds recorded in the official property records of Collin County, Texas

Defendants' purported foreclosure sale deed to the Property, and the recording of that foreclosure sale deed by Defendant in the official property records of Collin County on or about August 3, 2010, under which Defendant asserts an interest in the Property, interferes with Plaintiffs' ownership interests in the Property.

Defendant's purported foreclosure sale deed to the Property, although appearing valid on its face, is in fact invalid and of no force and effect for the reasons described in this First Amended Petition.

Therefore, Plaintiffs request a judgment from this Court declaring that Defendant's

purported foreclosure sale deed to the Property is invalid, ordering that it be removed from the title to the Property, and quieting title to the Property in Plaintiffs.

## PLAINTIFFS' MOTION FOR MEDIATION

Plaintiffs request that this Court refer this suit to non-binding mediation pursuant to the Texas Civil Practice and Remedies Code, Section 154.001, et. seq. and, in support thereof, show the Court the following:

Section 154.002, of the Texas Civil Practice and Remedies Code, in pertinent part, provides that "it is the policy of this State to encourage the peaceable resolution of disputes, with special consideration given to . . . the early settlement of pending litigation through voluntary settlement procedures." Section 154.003 provides that "it is the responsibility of all trial and appellate courts . . . to carry out the policy under Section 154.002."

Mediation is a non-binding confidential process. Therefore, the parties have all to gain and nothing to lose in attempting a resolution of this matter using the mediation approach. The costs of mediation should be divided equally and taxed as costs.

Plaintiffs move that the Court refer this matter to a qualified mediator or a mediators' organization as the Court determines. Mediation is defined in Section 154.023, Tex. Civ. Prac. & Rem. Code as follows:

(a)   Mediation is a forum in which an impartial person, the mediator, facilitates communication between parties to promote reconciliation, settlement, or understanding among them.

(b)   A mediator may not impose his own judgment of the issues for that of the parties.

This Court has authority to order mediation under Section 154.003, Tex. Civ. Prac. & Rem. Code, which provides that:

"A court may, on its own motion or the motion of a party, refer a pending dispute for resolution by an alternative dispute resolution procedure. . . ."

### PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES

The Plaintiffs have retained the undersigned counsel to represent them in this action and have agreed to pay the undersigned counsel reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to the Plaintiffs would be equitable and just, and is authorized by Texas law.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that Plaintiffs be granted the following relief:

1. judgment against Defendant setting aside Defendant's purported foreclosure sale of the Property conducted on August 3, 2010;

2. judgment against Defendant cancelling Defendant's purported foreclosure sale deed to the Property dated on or about August 3, 2010;

3. judgment against Defendant cancelling the recording of Defendant's purported foreclosure sale deed on or about August 3, 2010 in the official property records of Dallas County, Texas;

4. judgment declaring that Defendant's purported foreclosure sale deed to the Property is invalid, ordering that it be removed from the title to the Property, and quieting

title to the Property in Plaintiffs;

5. judgment against First Horizon for actual damages, within the jurisdictional limits of this Court;

6. prejudgment interest as provided by law;

7. the Plaintiffs' reasonable and necessary attorney's fees in prosecuting their claims through trial and, if necessary, through appeal;

8. postjudgment interest as provided by law;

9. all costs of suit;

10. such other and further relief, at law or in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

By: _____
Stephen W. Tiemann
Texas Bar No. 20021750
2000 E. Lamar Blvd.
Suite 600
Arlington, TX 76006
Tel. (817) 275-7245
Fax. (817) 275-1056
Email: steve@swtlaw.net
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Plaintiffs' First Amended Petition has been served on the Defendant, through its registered agent for service of process, at its registered office, on the 16th day of September, 2010.

_____
Stephen W. Tiemann